UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES N. KAMINSKI, *et al.*,

        Plaintiffs,

                              Case No. 15-cv-12810
                              Honorable Gershwin A. Drain

v.


BRAD COULTER, *et al.*,

        Defendants.
_____/

**OPINION AND ORDER GRANTING THE RETIREMENT COMMISSION DEFENDANTS' MOTION TO DISMISS [#18], GRANTING THE MERC DEFENDANTS' MOTION TO DISMISS [#54] AND GRANTING IN PART AND DENYING IN PART THE STATE TREASURER DEFENDANTS' MOTIONS TO DISMISS [#52, #60]**

## I.      INTRODUCTION

On August 10, 2015, Plaintiffs filed the instant action seeking class certification, damages and injunctive relief stemming from an order issued by the Defendant City of Lincoln Park's Emergency Manager, Defendant Brad L. Coulter, which terminated Plaintiffs' City-provided health insurance payments and replaced them with stipends. Plaintiffs allege that their constitutional rights under the Contract, Due Process and Taking Clauses, as well as their First Amendment right to petition the government have been violated.

-1-

In addition to the City of Lincoln Park and Coulter, Plaintiffs also assert their claims against the following: R. Kevin Clinton,  the former Treasurer of the State of Michigan; Nick A. Khouri, the current Treasurer of the State of Michigan, the City of Lincoln Park Police and Fire Retirement Commission and five of its Trustees, Thomas E. Karnes,[1] Larry Kelsey,[2] Patrick Culter, Matt Sadowski and Thomas Jankowski (collectively the "Retirement Commission Defendants"); Lincoln Park's City Council members Thomas Murphy, Mark Kandes, Elliott Zelenak, Mario Desanto, Christopher Dardzinski; the City of Lincoln Park's Finance Director, Lisa Griggs; the City of Lincoln Park Municipal Employees Retirement Commission and its members John DiFrancesco, Clifford Harris and Janice Hochberg (collectively the "MERC Defendants"); and the City of Lincoln Park General Employees Retirement Commission.

Presently before the Court are Motions to Dismiss filed by the Retirement Commission Defendants [Dkt. No. 18], the current and former Treasurers of the State of Michigan, R. Kevin Clinton and Nick A. Khouri [Dkt. Nos. 52 and 60], and the MERC Defendants [Dkt. No. 54].  These motions are fully briefed and a hearing was held on April 11, 2016.

---

[1]  Karnes is also the elected Mayor of the City of Lincoln Park.

[2]  Kelsey is also a member of the City Council.

## II.     FACTUAL BACKGROUND

Due to concerns for the ongoing financial distress experienced by the City of Lincoln Park and its ability to meet its financial obligations, the City Council voted to request a State of Michigan review of the City's financial stability on August 19, 2013.  The request was made pursuant to § 4(1)(a) of P.A. 436, MICH. COMP. LAWS § 141.1541 *et seq.*  The State commissioned Gabriel Roeder to perform the evaluation. Among other conclusions, his report found that the retirement system was not well funded and that receipt of contributions was critical to ensuring the system's assets would not be exhausted.

On February 10, 2014, a financial review team from the State of Michigan was appointed to review the financial condition of the City of Lincoln Park.  After meeting several times with various  City Officials and representatives and conducting an extensive review of the City's financial condition, the Review Team concluded that, in accordance with § 5(4)(b) of P.A. 436, a local government emergency existed and the appointment of an Emergency Manager was necessary to avoid municipal bankruptcy.

Governor Rick Snyder designated Defendant Coulter as the State Emergency Manager for the City of Lincoln Park on July 3, 2014.  In his first report to the Defendant State Treasurer, dated August 20, 2014, Defendant Coulter wrote of the

ongoing mismanagement of the Police and Fire Retirement System. On January 17, 2015, he wrote to the Michigan Governor and proposed elimination of the health insurance coverage for the Lincoln Park retirees. The financial savings from the termination of the health coverage payments would be used to re-fund the pension system.

On April 22, 2015, Defendant Coulter issued two orders, under authority granted by P.A. 436, that replaced City-provided health insurance payments for the named Plaintiffs with a stipend. The stipend payments for retirees included $150.00 per month for retirees under the age of 65 and $50.00 per month for retirees 65 and older. Additionally, retirees were required to start paying into Medicare "Part B" each month. Before issuing the orders, the State Treasurer determined that Defendant's Coulter's proposal satisfied the criteria in § 12(1)(k) of P.A. 436.

## III.    LAW & ANALYSIS

### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon

which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'"
*Id*.

The district court generally reviews only the allegations set forth in the complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss, however "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account. *Amini v. Oberlin College*, 259 F. 3d 493, 502 (6th Cir. 2001). Documents attached to a defendant's "motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.*

**B.   Motions to Dismiss**

**1.   Contract Clause**

**a.The Retirement Commission Defendants and the MERC Defendants**

To recover under section 1983, Plaintiffs must plead and prove two elements: (1) they suffered the deprivation of a right secured by the Constitution or the law of the United States, and (2) the deprivation was caused by a person acting under color of state law. *Wittstock v. Mark A. Van Sile, Inc*., 330 F.3d 899, 902 (6th Cir. 2003). Damages are recoverable under section 1983 only where the plaintiff can "establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 83 F. Supp. 298, 304 (E.D. Wis. 1993); *Ashcroft v. Iqbal*,

556 U.S. 662, 676 (2009) ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.")

The Contract Clause provides that: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl.1. While it appears the Contract Clause precludes any and all impairments of contract, the "prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula." *Home Bldg. & Loan Ass'n v. Blaisdel*, 290 U.S. 398, 428 (1934).

As a threshold matter, a Contract Clause claim "must be based on legislative acts because 'the prohibition [against the impairment of contracts] is aimed at the legislative power of the state, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals.'" *Welch v. Brown*, 551 F. App'x 804, 808-09 (6th Cir. 2014) (quoting *Ross v. Oregon*, 227 U.S. 150, 162 (1913)). To determine if actions are an exercise of legislative power depends on "whether they contain matter which is properly to be regarded as legislative in its character and effect." *Welch*, 551 F. App'x at 809. While Defendant Coulter's issuance of an Order replacing the retiree health benefits with stipends in lieu of insurance payments may properly be considered a legislative act, none of the Retirement Commission Defendants' nor the MERC Defendants'

complained of conduct can be considered legislative in nature. *See Welch v. Brown*, 551 F. App'x 804, 809-10 (6th Cir. Jan. 3, 2014) (concluding that the "character and effect of" the City of Flint's Emergency Manager's Orders modifying existing contracts related to municipal retirees' health care benefits "are properly understood as legislative . . . .").

The Retirement Commission is charged with the administration, management and operation of the City's Police and Firefighters Retirement System. Its purpose is to provide "retirement allowance and death benefits for policemen and firemen of the City of Lincoln Park." Plaintiffs fail to state a viable Contract Clause claim against the Retirement Commission Defendants because they did not take part in passing any law, statute, ordinance or order which impaired the retirees' health care benefits. Because Plaintiffs cannot establish the Retirement Commission Defendants' personal responsibility for the claimed impairment of their contractual rights, Plaintiffs cannot state a claim upon which relief may be granted. *Diebitz*, 83 F. Supp. at 304; *Iqbal*, 556 U.S. at 676. Moreover, Plaintiffs' Contract Clause claim against the Retirement Commission Defendants is not based on legislative acts taken by these Defendants. *Welch*, 551 F. App'x at 808-09 (impairment of contract claim must "aimed at the legislative power of the state, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or

-8-

individuals.")

Plaintiffs argue that the Retirement Commission Defendants were acting under color law when they breached their fiduciary duties and were deliberately indifferent to the pension fund's decline, which was the proximate cause of Defendant Coulter ordering replacement of retiree health insurance payments with a stipend to redirect money into the underfunded pension system. Plaintiffs' theory of liability sounds in breach of fiduciary duty, rather than a violation of the Contract Clause. However, Plaintiffs do not argue that they have alleged such a claim against the Retirement Commission Defendants. Plaintiffs' Contract Clause claim against the Retirement Commission Defendants is therefore dismissed.

Defendant City of Lincoln Park sponsored the Municipal Employees Retirement Commission, or MERC, a governmental defined benefit retirement plan, recognized by the Internal Revenue Code as a qualified trust under IRC § 401a. The MERC provided retirement benefits for all general employees (nonpublic safety employees) of the City. The MERC was created on July 1, 1945. The City terminated the MERC through action taken by the Mayor and the City Council at a meeting held on or about September 6, 2011. As such, the City agreed to transfer its locally controlled MERC assets to a state sponsored retirement system, the Michigan Employees Retirement System ("MERS"). The MERC trustees last met on December

-9-

8, 2011.  The City transferred its MERC assets to MERS effective January 1, 2012.

Similarly, with respect to the MERC Defendants, Plaintiffs allege no facts that could give rise to any alleged wrongdoing by these Defendants in their capacity as Trustees of the general employees retirement commission.  The only allegation against the MERC Defendants is Plaintiffs' claim that they "impaired retiree pension and health care protections by their continued and unilateral reductions in funding and investments."   Compl., ¶ 77.   The MERC Defendants, like the Retirement Commission Defendants, did not take part in passing any law, statute, ordinance or order which impaired the retirees' health care benefits. Nor is Plaintiffs' Contract Clause claim against the MERC Defendants based on legislative acts taken by these Defendants.   Because Plaintiffs cannot establish the MERC Defendants' personal responsibility for the claimed impairment of their contractual rights, nor any legislative acts undertaken impairing their contractual rights, Plaintiffs cannot state a Contract Clause claim upon which relief may be granted against the MERC Defendants. *Diebitz*, 83 F. Supp. at 304; *Iqbal*, 556 U.S. at 676.

Additionally, even if the Complaint alleged a viable Contract Clause claim against the MERC Defendants, such a claim would be subject to dismissal as time barred.[3]  Actions brought under 42 U.S.C. § 1983 "must borrow the statute of

---

[3] It is similarly unclear whether Plaintiffs' allegations amount to a breach of fiduciary duty claim.  However, the statute of limitations for a breach of fiduciary duty is three years.

limitations governing personal injury actions in the state in which the § 1983 action was brought." *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003).  The United States Court of Appeals for the Sixth Circuit has held that the appropriate statute of limitations to be borrowed for § 1983 actions arising in Michigan is the three-year statute of limitations period for personal injury claims. *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004).

"Although state law provides the statute of limitations to be applied in a § 1983 damages action, federal law governs the question of when the limitations period begins to run." *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).  Thus, "[t]he statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action.  A plaintiff has reason to know of his injury when he should have discovered it thorough the exercise of reasonable diligence." *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991).

Here, Plaintiffs' Complaint expressly states that the MERC Defendants are liable for their actions prior to 2011.  If the alleged decline of the general employees' retirement system proximately caused Plaintiffs' elimination of retiree health care, and the MERC Defendants breached their fiduciary duties while acting as trustees, then the Plaintiffs' claim against them accrued at the time the alleged wrongdoing

---

*Wayne Co. Employees Retirement Sys. v. Wayne Co.*, 301 Mich. App. 1, 67 n.37 (2013).

occurred.  Therefore, the statute of limitations had run by the time the Plaintiffs filed the instant Complaint in 2015 since the MERC Defendants last met in December of 2011, or more than three years prior to the filing of the Complaint.  The MERC Defendants are also entitled to dismissal from this action because Plaintiffs' claims are time barred as to these Defendants.

### b.   The State Treasurer Defendants

As an initial matter, Defendant Khouri is automatically substituted for the official capacity claim against Defendant Clinton.  Federal Rule of Civil Procedure 25 states in relevant part:

> An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. *The officer's successor is automatically substituted as a party.*

Fed. R. Civ. P. 25(d)(emphasis supplied).  Accordingly, Plaintiffs' official capacity claims against Defendant Clinton are extinguished.

Defendants argue that they did not take any action that caused any harm to the Plaintiffs.  The Court disagrees.  Defendants were participants in the decision to replace City-provided healthcare payments with a stipend.  Moreover, the State Treasurer has authority over Emergency Managers of municipalities in several respects.  Emergency Managers are required to submit quarterly reports to the State Treasurer with respect to the financial condition of the local government under

emergency management.   Additionally, the State Treasurer has discretion and approval over four-dozen sections of P.A. 436 and the Governor "may delegate his . . . duties under this section to the state treasurer."  MICH. COMP. LAWS § 141.1549(8). As such, Plaintiffs' Complaint asserts that Defendants were active participants and decision-makers whose directives violated Plaintiffs' constitutional rights under the Contract Clause.

Defendants raise Eleventh Amendment and qualified immunity as defenses to Plaintiffs' claim, however the Court finds these defenses are unavailable under the circumstances.  The Eleventh Amendment prohibits suits in federal court against state officials sued in their official capacity, unless the immunity is expressly waived by the state or Congress, regardless of the relief sought.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984).  A limited exception applies to a suit against a state official for prospective injunctive relief.  *Id*. at 102.  In that case, a federal court has jurisdiction to issue prospective injunctive relief compelling a state official to comply with federal law.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).  Here, Plaintiffs complain about the continuing violation of their constitutional rights under the Contract Clause.  As such, they are seeking prospective injunctive relief and their claim is not barred by the Eleventh Amendment.

With respect to Plaintiffs' individual capacity claim against the State Treasurer

-13-

Defendants, the Court concludes that Defendants are not entitled to qualified immunity. The first inquiry in the qualified immunity analysis is whether, based on the facts alleged and considered "in the light most favorable to the party asserting the injury," the official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the district court finds a constitutional violation, the next step is to determine whether the right was clearly established. *Id.* at 202.

Here, Plaintiffs have alleged substantial impairment of their constitutional rights under the Contract Clause due to the Defendants participation in the decision to replace City-provided healthcare with a stipend. Plaintiffs' constitutional rights under the Contract Clause were clearly established at the time Defendants took part in violating those rights. Defendants are likewise not entitled to qualified immunity.

Lastly, Defendants argue that Plaintiffs' Contract Clause claim fails as a matter of law because Plaintiffs' contracts were expired, as well based on the Supreme Court's decision in *M&G Polymers USA v. Tackett*, 135 S.Ct. 926 (2015). Such arguments are premature at this stage of the proceedings. Whether *Tackett* and its progeny bar Plaintiffs' claim should be determined at the summary judgment stage after Plaintiffs have had an opportunity to conduct discovery. At this stage of the proceedings, Plaintiffs need only state a claim upon which relief may be granted and the Court concludes that they have as to the State Treasurer Defendants.

-14-

### 2.      First Amendment

In Count II, Plaintiffs seek to invalidate P.A. 436 as a violation of their First Amendment right to petition the Government.  However, the Complaint does not assert any allegations against the Retirement Commission, the MERC or the State Treasurer Defendants asserting how these Defendants prevented Plaintiffs from petitioning the Government. These Defendants should likewise be granted dismissal as to Count II.  *Diebitz*, 83 F. Supp. at 304; *Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Additionally, it is worth noting that Plaintiffs' counsel has raised a nearly identical claim that was rejected by another district judge in this Court.  *See AFSCME Council 25 v. Wayne County*, No. 15-cv-13288, 2015 U.S. Dist. LEXIS 140761 (E.D. Mich. Oct. 16, 2015).  Moreover, the same type of challenge to P.A. 436 was soundly disposed of in an earlier case, *Phillips v. Snyder*, No. 13-cv-11370, 2014 U.S. Dist. LEXIS 162097 (E.D. Mich. Nov. 19, 2014).  In *Phillips*, the court held that the plaintiffs failed to state a valid First Amendment claim because they did not "allege[] that defendants prevented them from petitioning the state government."  *Phillips*, 2014 U.S. Dist. LEXIS 162097, at *49.  The *Phillips's* court explained that:

> States are free to make decisions regarding the political control of localities as long as the state citizens are free to urge proposals to the

state.  This is because states have final authority over local matters[.] . .
. . Additionally, the Petition Clause does not require the state to actually
respond to citizen petitioners; it only requires that the state allow its
citizens to make the government aware of its views.

*Id.*

Here, Plaintiffs have failed to state a First Amendment claim.  They do not
allege that they have been prevented from petitioning the Government. In their
Response, Plaintiffs fail to address the pleading deficiencies with respect to their First
Amendment claim.  This claim is dismissed from this cause of action.

### 3.   Due Process

Lastly, Plaintiffs' position with respect to their Due Process claim is not entirely
clear.  A review of the Complaint suggests that Plaintiffs are raising a procedural due
process claim and a takings claim as well.  Their Complaint at Count III is entitled:
"Unconstitutional Deprivation of Property Interest Without Due Process or Just
Compensation."  Plaintiffs assert that they were deprived of their "property rights
related to health insurance, without any due process or independent appeal–because
no due process or appeal is provided by P.A. 436."  Compl., ¶ 85.

In order to establish a procedural due process violation, Plaintiffs must show
that (1) they have a life, liberty, or property interest protected by the Constitution; (2)
they were deprived of that interest by a state actor; (3) they were not afforded timely
and adequate process under the law.  *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th

-16-

Cir. 2009). "Property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlements to those benefits." *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

Similar to the deficiencies with respect to Plaintiffs' Contract Clause allegations, Plaintiffs do not allege the Retirement Commission Defendants nor the MERC Defendants' personal responsibility for the claimed deprivation of their property rights without adequate process under the law. These Defendants were not involved in the decision to replace the Plaintiffs' health insurance payments with stipends, nor did they undertake any actions that deprived the Plaintiffs' of their claimed property rights. Nor could they since these Defendants are solely authorized to administer city employee pension funds. Plaintiffs cannot state a Due Process claim upon which relief may be granted against the Retirement Commission Defendants or the MERC Defendants. *Diebitz*, 83 F. Supp. at 304; *Iqbal*, 556 U.S. at 676.

Conversely, as to the State Treasurer Defendants, Plaintiffs have alleged sufficient facts to state a claim for these Defendants personal involvement in the claimed deprivation of their property rights without adequate process of law. While

-17-

Defendants argue that Plaintiffs' contracts were expired and Tackett prevents a finding that Plaintiffs' health benefits were vested, such arguments are improper at this stage of the proceedings. Additionally, Eleventh Amendment immunity and qualified immunity are unavailable to the State Treasurer Defendants under the circumstances herein. Therefore, the State Treasurer Defendants are not subject to Rule 12(b) dismissal.

Additionally, Plaintiffs seem to argue in their response in opposition that they have raised a substantive due process claim in addition to their procedural due process claim. However, this is not apparent from their pleading, and, in any event, such a claim is subject to dismissal. The substantive component of the Due Process Clause imposes certain limitations on government deprivations of life, liberty, and property, independent of the procedural limitations imposed by procedural due process concerns. *See Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992). "One aspect of substantive due process is the right to be free from 'arbitrary and capricious' action by government actors." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003). When a government actor's conduct is at issue, the conduct will violate substantive due process rights "only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

A successful substantive due process claim also requires the violation of a fundamental right. *Perry v. McGinnis*, 209 F.3d 597, 609 (6th Cir. 2000). Here, Plaintiffs' contractual rights to health insurance payments are not fundamental rights within the meaning of the substantive due process clause. *Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990). In *Charles*, the Sixth Circuit explained "[s]tate-created rights such as the . . . contractual right to promotion do not rise to the level of 'fundamental' interests protected by substantive due process. Routine state-created contractual rights are not 'deeply rooted in this Nation's history and tradition,' and, although important, are not so vital that 'neither liberty nor justice would exist if [they] were sacrificed." *Id*. Accordingly, Plaintiffs cannot state a viable substantive due process claim.

### 4.    The Taking Clause

The Taking Clause of the Fifth Amendment provides that no "private property shall be taken for public use, without just compensation." U.S. Const. amend. V. There are two types of takings within the meaning of the Taking Clause: physical and regulatory takings. *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 224-25 (1986). It is unclear if Plaintiffs are raising a Taking Clause claim as they fail to address Defendants' arguments that replacing payment of health insurance premiums with stipends is not a regulatory taking. *See Buffalo Teachers Fed'n*, 464 F.3d 362,

374 (2d Cir. 2006).[4]

Plaintiffs' Taking Clause claim is subject to dismissal as to the Retirement Commission Defendants and the MERC Defendants for the same reasons Plaintiffs' Contract Clause claim fails. Plaintiffs' Complaint is silent as to any acts undertaken by these Defendants which could be considered a regulatory taking of Plaintiffs' health care benefits. The Retirement Commission Defendants and MERC Defendants are solely responsible for the administration of municipal employee pension funds. Because Plaintiffs cannot establish these Defendants' personal responsibility for the claimed regulatory taking of their health care benefits, Plaintiffs cannot state a Takings claim upon which relief may be granted against these Defendants. *Diebitz*, 83 F. Supp. at 304; *Iqbal*, 556 U.S. at 676.

Conversely, as to the State Treasurer Defendants, Plaintiffs have alleged sufficient facts to state a claim for these Defendants personal involvement for the claimed regulatory taking of their health care benefits. As previously discussed, Eleventh Amendment immunity and qualified immunity are unavailable to the State Treasurer Defendants under the circumstances herein. Therefore, the State Treasurer Defendants are not subject to Rule 12(b) dismissal.

---

[4] Plaintiffs do not allege a physical taking which occurs "when the government physically takes possession of an interest in property for some public purpose." *Buffalo Teachers Fed'n*, 464 F.3d at 374.

## IV.   CONCLUSION

For the reasons stated above, the Retirement Commission Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)[#18] is GRANTED.

Defendant State Treasurer Clinton's Motion to Dismiss [#52] is GRANTED IN PART and DENIED IN PART.

The MERC Defendants' Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [#54] is GRANTED.

Defendant R. Kevin Clinton's Motion to Dismiss [#60] is GRANTED IN PART and DENIED IN PART.

Count II is DISMISSED.  Counts I and III remain, except as to the Retirement Commission Defendants and the MERC Defendants.

SO ORDERED.

Dated:  May 5, 2016

/s/ Gershwin A. Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of
record by electronic and/or ordinary mail.

/s/ Tanya Bankston
Case Manager

-21-